MOORE, J.,
for the Court:
¶ 1. On December 2, 1997, in the Circuit Court of Forrest County, Mississippi, appellant Charlie L. Smith, Jr. pled guilty to the crime of manslaughter. Smith was sentenced to ten years in the Mississippi Department of Corrections with two years to serve on the Intensive Supervision Program/House Arrest and eight years suspended upon successful completion of the Regimented Inmate Discipline Program with five years suspended on written order of probation, and to pay restitution in the amount of $200 per month for a period of sixty months to the victim’s family. While on the Intensive Supervision Program/House Arrest, Smith violated a rule of the program and was thereby arrested and placed in the actual custody of the MDOC to complete his original ten year sentence. Smith challenged this transfer by filing a motion to vacate transfer order and sentence, which was denied by the circuit court after an evidentiary hearing. It is from this denial that appellant Smith appeals, presenting the following issues for review:
I. THE MISSISSIPPI DEPARTMENT OF CORRECTIONS VIOLAT *52 ED STATUTORY LAW IN REMOVING CHARLIE L. SMITH, JR. FROM THE INTENSIVE SUPERVISION PROGRAM.
II. THE TRIAL COURT LACKED JURISDICTION TO REMOVE CHARLIE L. SMITH, JR. FROM THE INTENSIVE SUPERVISION PROGRAM.
III. THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO VACATE TRANSFER ORDER AND SENTENCE.
Having reviewed the assignments of error, this Court affirms.
STATEMENT OF THE FACTS
¶ 2. Upon Smith’s guilty plea to the manslaughter charge, entered on December 2, 1997, the Circuit Court of Forrest County, Mississippi sentenced Smith to ten years in the Mississippi Department of Corrections with two years to serve on the Intensive Supervision Program/House Arrest and eight years suspended upon successful completion of the Regimented Inmate Discipline Program, with five years suspended on written order of probation, and to pay restitution in the amount of $200 per month for a period of sixty months to the victim’s family. The sentencing order stated further that should Smith fail to qualify, be accepted, and/or fail to successfully complete the Intensive Supervision Program/House Arrest, the MDOC may, without further order of the Circuit Court of Forrest County, Mississippi, place Smith in any MDOC facility deemed appropriate to complete his original ten year sentence.
¶ 3. After Smith successfully completed the Regimented Inmate Discipline Program on or about August 18, 1998, he was released from confinement at the MDOC with two years to serve on the Intensive Supervision Program/House Arrest, with the remaining eight years of the original ten year sentence suspended. The probation and restitution portion of the sentence remained the same. A few months later, a MDOC Rule Violation Report was filled out on Smith concerning a violation of the house arrest program rules. The report was dated October 28, 1998, and stated that on that date a urine sample was taken from Smith for a routine urinalysis. The report explained that this sample was tested on November 3, 1998, testing positive for cannabinoids, which is a violation of the Intensive Supervision Program/House Arrest agreement and rules. On November 4, 1998, Smith’s supervising field officer was informed of these results, and Smith was arrested and placed in the Forrest County Regional Jail pending the completion of revocation proceedings.
¶ 4. In its November 9, 1998 order, the Forrest County Circuit Court stated that “having been advised by the MDOC that the Defendant has failed to complete the Intensive Supervision Program and the Court hereby approves the MDOC’s placement of the Defendant in whatever facility deemed appropriate.... ”
¶ 5. On November 11, 1998, Smith obtained his own, independent urine sample from Puckett Laboratory in'Hattiesburg, Mississippi which tested negative for can-nabinoids.
¶ 6. The earlier mentioned Rule Violation Report also recorded the particulars concerning the hearing held in front of the MDOC disciplinary committee. The report lists all the details of this hearing, including the finding that Smith was guilty of said violation. This record of the MDOC hearing was dated November 24, 1998. On November 25, 1998, Smith was notified by the MDOC of his right to appeal this decision. In a letter dated December 9, 1998, Smith gave notice of his appeal to the MDOC, using his independent drug test and the disparity in test results as the basis. After review of the Rule Violation Hearing Appeal, the MDOC found that the disciplinary committee had made the proper decision and found no merit in Smith’s appeal.
*53 ¶7. Smith filed his motion to vacate transfer order and sentence in the Forrest County Circuit Court on December 8, 1998, contending that he should be allowed to remain in the Intensive Supervision Program/House Arrest. On January 20, 1999, after holding an evidentiary hearing on the matter, the circuit court denied Smith’s motion. From this denial, appellant Smith filed this appeal. •
LAW AND ANALYSIS
I. DID THE MISSISSIPPI DEPARTMENT OF CORRECTIONS VIOLATE STATUTORY LAW IN REMOVING CHARLIE L. SMITH, JR. FROM THE INTENSIVE SUPERVISION PROGRAM?
¶ 8. This assignment of error is founded on the general idea that the MDOC did not follow the requirements, as established by Miss.Code Ann. § 47-5-1003(3), in removing Smith from the house arrest program and placing him into the general prison population to complete his original ten year sentence. Smith contends that since the MDOC did not follow these specific requirements, the removal is void, and he should be placed back on the house arrest program. This Court does not agree.
¶ 9. Appellant Smith is absolutely correct in stating that Miss.Code Ann. § 47-5-1003 governs situations concerning the Intensive Supervision Program/House Arrest, and that subsection (3) specifically governs situations where there has been a violation of the program, as in the present case. Smith is also correct in quoting the applicable portion of the statutory subsection as follows:
Such offender is under the full and complete jurisdiction of the department and subject to removal from the program by the classification committee.
Miss.Code Ann. § 47-5-1003(3) (emphasis added). From this Smith argues that since the statute states removal is determined by the classification committee, and all records of Smith’s MDOC hearing reflect that his violation incident was heard by the disciplinary committee, the MDOC failed to follow statutory requirements. Smith argues, without citing any authority, that the disciplinary committee is a separate entity within the MDOC without the authority to remove him from the program, thereby making the removal void. In making this conclusion, Smith is incorrect.
¶ 10. First, as stated, Smith cites no authority to defend his contention that the disciplinary committee lacks the authority to hold such hearings and remove offenders from the program. Although § 47-5-1003(3) does use the word “classification” to describe the committee that is to hear such violations, the disciplinary committee is not a separate entity, but is instead a part of the classification committee. The Mississippi Supreme Court in Babbitt v. State, 755 So.2d 406, 409 (¶ 14) (Miss.2000) dealt with a very similar situation with an almost identical fact pattern. In the opinion, the court discussed a Rule Violation Report against the defendant and the committee hearing conducted on the matter. The reviewing committee was referred to as the Mississippi Department of Corrections Disciplinary/Classification Committee. Id. at (¶ 6). In further discussion of this procedure, the court stated: “the Disciplinary Committee, an arm of the Classification Committee .... ” Id. at (¶ 14) (emphasis added). This Court finds that the disciplinary committee had authority to conduct the hearing on Smith’s house arrest rule violation; therefore, we do not see any reason why the removal should be void and find this assignment of error to be without merit.
II. DID THE TRIAL COURT LACK JURISDICTION TO REMOVE CHARLIE L. SMITH, JR. FROM THE INTENSIVE SUPERVISION PROGRAM?
¶ 11. Under this assignment of error, Smith first contends that the order entered by the circuit court on November *54 9, 1998, stating that Smith was to be removed from the house arrest program, was void due to the circuit court’s lack of jurisdiction. This Court agrees with that contention. However, we do not agree with Smith’s conclusion that simply because the lower court lacked jurisdiction to enter such an order, his removal is void, and he should therefore be placed back into the house arrest program. For the following reasons, this Court affirms Smith’s removal from the Intensive Supervision Program/House Arrest.
¶ 12. On November 4, 1998, Smith’s supervising field officer was informed of the test results displaying Smith’s rule violation, and Smith was arrested and placed in the Forrest County Regional Jail pending the completion of revocation proceedings. On November 9, 1998, the Forrest County Circuit Court entered an order which stated as follows:
This Defendant having been sentenced to the custody of the MDOC on 12-2-97 to serve 10(ten) years for the crime of manslaughter, subject to the provision of § 47-5-1001 through § 47-5-1015, Mississippi Code of 1972, as amended, being the Intensive Supervision Program, and the Court having maintained jurisdiction of this matter pursuant to § j.7-7-Jp7 and the Court having been advised by the MDOC that the Defendant has failed to complete the Intensive Supervision Program and the Court hereby approves the MDOC’s placement of the Defendant in whatever facility deemed appropriate and the Defendant is to complete the original sentence of the Court.
The record of the MDOC disciplinary committee hearing that was conducted on the matter was dated November 24, 1998. The MDOC committee found Smith guilty of the rule violation, thereby removing him from the house arrest program. The MDOC records also showed that the MDOC again found Smith guilty after reviewing the Rule Violation Hearing Appeal filed by Smith. This assignment of error raises into question the November 9, 1998 circuit court order.
¶ 13. As previously mentioned, Smith argues that the November 9, 1998 order is void based on lack of jurisdiction. The order states that the circuit court has jurisdiction on this matter pursuant to § 47-7-47, and Smith claims this is incorrect. We agree with Smith on this point. Section 47-7-47 only discusses the court’s jurisdiction in matters of probation and earned probation, not house arrest. In Babbitt, the circuit court did not acknowledge the disciplinary committee’s finding and instead invoked § 47-7-47 claiming it had jurisdiction to ignore the committee’s findings. The Mississippi Supreme Court held: “Chapter 7 of Title 47 governs probation and parole. The circuit court sentenced Babbitt to ISP which is governed by Chapter 5 of Title 47.... Nowhere in Chapter 7 is the ISP mentioned.” Babbitt, 755 So.2d at 408-09 (¶ 10). In addition, the language of Miss.Code Ann. § 47-5-1003(3) itself explains which institution has jurisdiction over matters regarding the house arrest program and violations of the applicable program rules:
To protect and to ensure the safety of the state’s citizens, any offender who violates an order or condition of the intensive supervision program shall be arrested by the correctional field officer and placed in the actual custody of the Department of Corrections. Such offender is under the full and complete jurisdiction of the department and subject to removal from the program by the classification committee.
Miss.Code Ann. § 47-5-1003(3) (emphasis added). It is clear that the decision whether to remove an offender from the house arrest program is left to the MDOC classification committee. “Section 47-5-1003(3) confers ‘full and complete’ jurisdiction on the classification committee in matters relating to violations of the ISP.” Babbitt, 755 So.2d at 409 (¶ 11).
¶ 14. Although the circuit court order has no effect due to lack of jurisdiction, *55 Smith was found guilty of violating the program rules under the applicable laws and guidelines as established by § 47-5-1003 and the MDOC. The correctional field officer had every right to arrest Smith upon learning of his violation and place him in the actual custody of the MDOC. Then, as authorized by statute, the disciplinary/classification committee conducted a hearing and an appeal on the matter. Upon ruling that Smith was guilty, he was permanently removed from the Intensive Supervision Program/House Arrest. All of this was within the jurisdiction of the MDOC. Therefore, Smith’s contention that he should be placed back on the house arrest program because the Forrest County Circuit Court lacked jurisdiction to enter an unnecessary order is without merit.
III. DID THE TRIAL COURT ERR IN OVERRULING THE MOTION TO VACATE TRANSFER ORDER AND SENTENCE?
¶ 15. Due to this Court’s ruling in the above assignment of error, this issue is moot. In addition, as noted in Babbitt, “instead of moving for post-conviction relief, [defendant] should have followed the ‘offender grievance procedure’ established by the MDOC in its standard operating procedure manual at 20.08.01 in order to have himself placed back in the ISP.” Id. at (¶ 15).
¶ 16. Finding no merit in the assignments of error, this Court affirms Smith’s removal from the Intensive Supervision Program/House Arrest. This Court also affirms the circuit court’s denial of the motion to vacate transfer order and sentence, but on the grounds of lack of jurisdiction. See Id. at (¶ 16).
¶ 17. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF DENIAL OF POST-CONVICTION RELIEF IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.